USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ___
DATE FILED: 4/2/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MAURICIO BAEZ ROMERO,

Plaintiff,

-against-

12 Civ. 1942 (LAK)

DHL EXPRESS, INC., et al.,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

Mauricio Baez Romero

*Plaintiff Pro Se*

David Wirtz
David Kenneth Broderick
LITTLER MENDELSON, P.C.

*Attorneys for Defendant DHL Express Inc.*

Walter Michael Kane
Melissa Sy Chan
CARYE KANE LLP

*Attorneys for Defendant Local 295 I.B.T.*

LEWIS A. KAPLAN, *District Judge.*

Plaintiff Mauricio Baez Romero was a member of International Brotherhood of Teamsters Local 295 and an employee of DHL Express, Inc. for twenty years until DHL terminated his employment in August 2011. Local 295 grieved his termination and proceeded to arbitration with DHL under their collective bargaining agreement ("CBA"). The arbitrator upheld Romero's termination. Romero subsequently filed suit against Local 295 and DHL seeking damages under numerous New York and Federal statutes. Now before this Court is DHL's cross-motion to confirm the arbitration award.

## *Background*

Romero was working for DHL Express at its 39th Street location in New York, New York when he suffered an injury loading a truck on June 2, 2011.[1] He alleges that his superiors harassed him for reporting the injury, causing him to file a grievance with his Union.[2] Romero took time off from work until July 24, 2011 to recover from his injury.[3] Upon his return, his supervisors, particularly one Jide Dowadu, allegedly continued to harass him and began to threaten him physically because of his injury and Dominican nationality.[4] Romero complained to DHL's human

---

1 Amended Complaint ("Cpt.") [DI 64] ¶¶ 14, 18 (hereinafter Cpt. ¶ __).

2 *Id.* at ¶¶ 18–30.

3 *Id.* at ¶ 31.

4 *Id.* at ¶¶ 40–70.

resources department and filed two more grievances with Local 295.[5] On August 15, 2011, Romero allegedly told certain of his supervisors that he could not continue to work in what he perceived as a hostile work environment.[6] He did not come to work on August 16, 17, or 18.[7] On August 18, DHL sent him a letter indicating that, in accordance with the CBA, DHL had removed him from the employee seniority list and that, as a result, he was dismissed.[8]

The CBA provides for a scheme of employee seniority. The more senior an employee, the more desirable work the employee is entitled to and the greater protection from layoffs the employee enjoys.[9] In certain circumstances an employee's seniority is "broken."[10] Section 6F(f) of the CBA provides that the "unauthorized failure to report to work for three (3) consecutive days when work is available" breaks seniority.[11] DHL determined that Romero had failed to report to work for three consecutive days and thus lost his seniority, justifying his termination. Romero filed a fourth grievance with Local 295 contesting his termination.[12]

---

5 *Id.* at ¶¶ 73–75, 77, 84.

6 *Id.* at ¶ 82.

7 *Id.* at ¶ 85.

8 Romero Aff. [DI 1] Ex. E.

9 Romero Aff. [DI 1] Ex. B CBA § 6.

10 *Id.* at § 6F.

11 *Id.* at § 6F(f).

12 DI 69 at 8.

Local 295 grieved Romero's termination and unsuccessfully argued for his reinstatement at a formal meeting with DHL.[13] Local 295 allegedly did not allow Romero to speak at the meeting, did not bring a witness who Romero thought would provide exculpatory information, and did not discuss Romero's other grievances against DHL supervisors.[14]

Local 295 then proceeded to arbitration in accordance with the CBA. The CBA provides that an experienced arbitrator named Stanley Aiges is to serve as arbitrator for all such disputes.[15] He served as the arbitrator in Romero's case.

The only two issues before the arbitrator were whether Romero lost his seniority under Section 6F of the CBA and, if so, whether this justified his termination. Local 295 appointed an experienced labor attorney to represent Romero's interests at the arbitration.[16] The attorney presented arguments and allowed Romero to testify on his own behalf.[17] Contrary to Romero's wishes, the attorney did not object to the admission into evidence of a video showing an incident between Romero and one of his superiors and did not present certain documents and emails related to the grievances that Romero filed against his superiors for discrimination.[18]

---

13 Cpt. ¶¶ 91–97.

14 *Id.*

15 Romero Aff. [DI 1] Ex. B CBA § 20D.

16 Wirtz Aff. [DI 18] ¶ 3.

17 DI 69 at 7. Romero argues in his memorandum that Local 295 did not present any argument as to why he should get his job back, but then notes that the attorney questioned DHL's witnesses and allowed Romero to testify on his own behalf.

18 *Id.*

The arbitrator found that Romero lost his seniority under the CBA and that this justified his termination.[19] Dissatisfied with the arbitrator's ruling, Romero sought relief in New York State court. After a complicated procedural history that need not be explained here, the case is now before this Court on DHL's cross-motion to confirm the arbitration award.

DHL argues that Romero does not have standing to challenge the arbitration award and that the Federal Arbitration Act mandates confirmation of the award.

Romero claims that he does have standing to challenge the award and that the arbitrator's award should be vacated because (1) the arbitrator did not act within his authority under the CBA,[20] (2) the arbitrator was partial to DHL,[21] and (3) the award was incorrect.[22] He alleges that a member of DHL management who harbored personal animus toward him had a role in the negotiations between DHL and Local 295 in which they chose Aiges as the arbitrator for all disputes under the CBA.[23] He alleges also that the arbitrator improperly disregarded or misinterpreted certain evidence that Romero presented at the arbitration.[24]

---

19 Cpt. Ex. A at 7.

20 DI 64 at 14–15.

21 Cpt. ¶¶ 116–22.

22 DI 69 at 12.

23 Cpt. ¶¶ 116–22.

24 DI 64 at 15–17.

The Court notes that Romero is currently proceeding *pro se*. He has, through apparently great effort, filed extensive papers and exhibits in support of his position that the arbitration award should be vacated. The Court has reviewed Romero's submissions carefully in rendering this decision.

*Discussion*

*Standing*

An employee whose claims are arbitrated under a collective bargaining agreement normally does not have standing to challenge the arbitration award.[25] There is an exception to this rule when the union has breached the duty of fair representation that it owes to the employee.[26] A claim for breach of the duty of fair representation exists where the union's actions toward the employee were "arbitrary, discriminatory, or in bad faith."[27] A union's actions are arbitrary where its "behavior is so far outside the wide range of reasonableness[] as to be irrational."[28] A union's

---

25 *Katir v. Columbia Univ.*, 15 F.3d 23, 24–25 (2d Cir. 1994).

26 *See id.*

27 *White v. Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001).

28 *Id.* (internal quotation marks omitted).

actions are in bad faith where they are "fraudulent, deceitful, or dishonest."[29] Mere negligence is not a breach of the duty of fair representation.[30]

"If a union pursues a termination through arbitration, a plaintiff must establish that the [the union's misconduct] . . . seriously undermine[d] the arbitral process."[31] Tactical errors in arbitration are insufficient to constitute a breach of the duty of fair representation.[32]

Here, Romero fails even to allege facts sufficient to support a claim that Local 295 breached its duty of fair representation. He alleges essentially that Local 295 made tactical errors at the initial meeting with DHL and at the arbitration by not presenting certain evidence and making certain arguments. But he fails to identify any fraudulent or dishonest actions or any behavior so unreasonable as to be irrational. In fact, Romero's papers reveal the opposite. Local 295 contested the propriety of Romero's termination. It took the dispute to arbitration and presented evidence and arguments on his behalf. The evidence that Romero argues Local 295 should have presented relates to the disputes that he had with his supervisors and the grievances he filed against him. Local 295 could have determined that presenting extensive evidence related to these grievances was not desirable because the evidence was not directly relevant to the issues at the arbitration – whether Romero's loss of seniority and termination were proper. These tactical considerations were within

---

29 *Id.*

30 *Scibilia v. Verizon Commc'ns, Inc.*, 493 Fed. Appx. 225, 227 (2d Cir. 2012); *Barr v. United Parcel Serv.*, 868 F.2d 36, 43 (2d Cir. 1989).

31 *Simmons v. Local Union 1199*, 319 Fed. Appx. 33, 33 (2d Cir. 2009) (quoting *Barr*, 868 F.2d at 43 (internal quotation marks omitted).

32 *Barr*, 868 F.2d at 43.

Local 295's discretion,[33] and Romero has failed to identify why Local 295's conduct was arbitrary or in bad faith.[34] At most, Local 295 was negligent in its tactical decisions, which is not a breach the duty of fair representation.[35]

Lacking a claim that Local 295 breached its duty of fair representation, Romero does not have standing to challenge the arbitrator's award. Nevertheless, the Court considers below his arguments for vacating or resisting confirmation of the award.

*Motion to Confirm the Award*

When presented with a motion to confirm an arbitration award under the Federal Arbitration Act ("FAA"), the Court normally "must grant" the motion "unless the award is vacated, modified, or corrected."[36] "The FAA narrowly defines the Court's authority to vacate an arbitration award."[37] The Court has discretion to do so:

"(1) where the award was procured by corruption, fraud, or undue means;

---

33 *See id.*

34 To the extent that Romero is arguing that Local 295 did not pursue his first three grievances against DHL supervisors, that simply is not relevant to whether Local 295 fairly represented him in contesting his termination.

35 *See Scibilia*, 493 Fed. Appx. at 227 (holding no breach of duty where union was, at worst, negligent in not pursuing employee grievances further).

36 9 U.S.C. § 9.

37 *Global Reins. Corp. v. Argonaut Ins. Co.*, 548 F. Supp. 2d 104, 109–10 (S.D.N.Y. 2008); *see Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007).

"(2) where there was evident partiality or corruption in the arbitrators, or either of them;

"(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing . . . ; or

"(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."[38]

An award may be vacated also where it was issued in manifest disregard of the law or of the parties' relevant agreement.[39]

Romero argues that the award should be vacated for three reasons – that the arbitrator did not exercise his authority under the CBA properly, that the arbitrator exhibited evident partiality to DHL, and that the award was incorrect under the CBA. None of these arguments is persuasive.

Romero claims that the arbitrator did not exercise his authority properly because the CBA does not allow the arbitrator to "disregard" any of its provisions, but that the arbitrator disregarded some of Romero's evidence.[40] This argument misapprehends the CBA. The CBA provides that the arbitrator is not allowed to apply some provisions but ignore others. This limitation does not apply to weighing evidence presented at arbitration. The CBA does not dictate how the arbitrator should credit or discredit evidence.

---

38 9 U.S.C. § 10.

39 *Schwartz v. Merrill Lynch & Co., Inc.*, 665 F.3d 444, 451–52 (2d Cir. 2011).

40 DI 64 at 14–15; *see also* Romero Aff. [DI 1] Ex. B CBA § 20E.

Romero argues also that the arbitrator exhibited "evident partiality." "[E]vident partiality, within the meaning of 9 U.S.C. § 10 will be found where a reasonable person would *have* to conclude that an arbitrator was partial to one party to the arbitration."[41] The possibility that someone at DHL who had personal issues with Romero was involved in choosing the arbitrator during the CBA negotiations, which occurred long before Romero's termination, even if true, would provide no support for Romero's claim that the arbitrator was partial to DHL. Nor does the fact that the arbitrator failed to credit or consider certain of Romero's evidence and testimony indicate partiality – the arbitrator was simply performing his role as adjudicator. Romero has not alleged anything that would oblige a reasonable person to conclude that the arbitrator was partial to DHL.

Romero argues finally that the award should be vacated because it was incorrect. The Court does have some doubts about the soundness of the arbitrator's decision to uphold Romero's termination. The arbitrator read the provision governing what conduct breaks an employee's seniority to permit also termination.[42] It is not immediately evident on the face of the CBA why a loss of one's seniority justifies termination.[43] And if it was Romero's absences that caused DHL to dismiss him, then the arbitrator likely should have looked to Appendix B of the CBA, which

---

41 *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanaya, A.S.*, 492 F.3d 132, 137 (2d Cir. 2007) (quoting *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir. 1984)) (internal quotation marks omitted).

42 Cpt. Ex. A. at 7.

43 Romero Aff. [DI 1] Ex. B CBA § 6F.

mandates a system of progressive discipline for unauthorized absences.[44] Under the rules laid out in Appendix B, it does not appear that Romero's termination was proper.

Nevertheless, "[i]t is well-settled that courts play a limited role when asked to review the decision of an arbitrator made pursuant to a grant of authority to interpret a collective bargaining agreement. Courts are not empowered to reexamine the merits of an arbitration award, even though the parties to the agreement may argue that the award arises out of a misinterpretation of the contract or a factual error."[45] "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, a court's conviction that the arbitrator has committed serious error in resolving the disputed issue does not suffice to overturn his decision."[46] An arbitrator's award is enforceable "as long as it draws its essence from the collective bargaining agreement."[47]

The interpretation of the seniority provision implicates the proper construction of the CBA. The Court is persuaded that the arbitrator's award "draws its essence from the collective bargaining agreement."[48]

---

44 *Id.* at App. B.

45 *Int'l Broth. of Elec. Workers, Local 97 v. Niagra Mohawk Power Corp.*, 143 F.3d 704, 714 (2d Cir. 1998).

46 *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009) (internal quotation marks omitted); *see Matter of Andros Compania Maritima, S.A.*, 579 F.2d 691, 703 (2d Cir. 1978).

47 *Niagra Mohawk Power Corp.*, 143 F.3d at 714 (quoting *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)) (internal quotation marks omitted).

48 *See United Steelworkers*, 363 U.S. at 597.

* * *

The Court has considered Romero's remaining arguments and finds them to be without merit.

*Conclusion*

In the absence of any statutory grounds to vacate the arbitration award, the Court grants DHL's cross-motion to confirm [DI 16]. In confirming the award, the Court does not in any way mean to be dismissive of Romero's claims of work place discrimination. On this motion, however, it is not the Court's role to delve into the merits of those claims.

SO ORDERED.

Dated: April 2, 2013

Lewis A. Kaplan
United States District Judge