UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                          :
MAURICIO BAEZ ROMERO,                    :
                            Plaintiff,    :
                                              :    12-CV-1942 (VEC) (RLE)
                -against-                  :
                                              :        MEMORANDUM
DHL EXPRESS, INC. AND LOCAL 295, I.B.T., :    OPINION & ORDER
                                              :
                                Defendants. :
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/24/2015

VALERIE CAPRONI, United States District Judge:

      *Pro se* Plaintiff Mauricio Baez Romero ("Baez"), a former courier of Defendant DHL Express Inc. ("DHL" or the "Company"), and former member of the collective bargaining unit represented by Defendant Local 295, I.B.T. (the "Union"), brings this suit against DHL and the Union alleging seventeen causes of action following his termination by DHL in August 2011. *Inter alia*, Baez alleges that DHL subjected him to a hostile working environment and to discriminatory and retaliatory treatment as a result of his race, national origin and disability after he filed for Workers' Compensation Benefits. Baez further alleges that the Union breached its duty of fair representation by processing his grievances in bad faith and in a manner that was arbitrary and discriminatory.

      Now pending before the Court are the Union's Motion for Summary Judgment as to Plaintiff's Sixteenth cause of action, and DHL's Motion for Partial Summary Judgment as to Plaintiff's Second, Fourth, Eighth, Thirteenth, Fifteenth and Seventeenth causes of action. For the reasons stated below, the Union's Motion for Summary Judgment is GRANTED, and DHL's Motion for Partial Summary Judgment is GRANTED in part and DENIED in part.

## BACKGROUND

At the time of his termination, Baez was employed as a "vacation relief" courier driver for DHL. *See* Defendants' Joint Rule 56.1 Statement ("Defs.' 56.1 Statement") ¶ 1. The Union and DHL are parties to a collective bargaining agreement ("CBA") governing couriers employed at DHL. *Id.* ¶¶ 2-3.

On June 2, 2011, Baez was injured while loading a DHL truck. Defs.' 56.1 Statement ¶¶ 6-7. Baez filed a Workers' Compensation claim, *id.* ¶ 8, Broderick Decl., Ex. E, and reported his injury and intention to file for Workers' Compensation benefits to his manager, John Montecalvo. Am. Compl. ¶ 19. Montecalvo allegedly insulted and harassed Baez for filing a Workers' Compensation claim. *Id.* ¶¶23-28. Following this conversation, Baez filed a grievance against Montecalvo. Defs.' 56.1 Statement ¶ 24; Kane Decl., Ex. D; Plaintiff's Response to Defendants' Joint 56.1 Statement ("Pl.'s 56.1 Resp.") ¶ 24.

Baez received Workers' Compensation benefits and was out of work from June 3, 2011 through July 24, 2011. Defs.' 56.1 Statement ¶ 8. When Baez returned to work on July 25, 2011, his supervisor, Jide Dawodu, allegedly assigned him to "off-load" operations in violation of his "light duty" status and also required him to work eight hours consecutively without a meal break. Am. Compl. ¶¶ 41, 43. Baez alleges that Dawodu also called him a "stupid Dominican" in front of two of his co-workers, *id.* ¶ 45, and "constantly mock[ed] [his] accent." *Id.* ¶ 44. Whenever a mistake was made, Dawodu would allegedly blame Plaintiff saying "only a stupid Dominican like Baez would do something like this." *Id.* ¶ 48.

On August, 2, 2011, Baez and Dawodu argued regarding Baez's claim that Dawodu was "short[ing]" his hours. Defs.' 56.1 Statement ¶ 26; Am. Compl. ¶¶ 52-64. During the argument, which was recorded on video and witnessed by Plaintiff's shop steward, Ignacio Garcia, and another DHL supervisor, Dave Gabrielli, Dawodu allegedly insulted Baez and threatened to

punch him.  Am. Compl. ¶¶ 58-64; Baez Decl., Ex. F at ECF p. 3-4.  Following the argument, Baez filed a police report, Defs.' 56.1 Statement ¶ 33; Kane Decl., Ex. M, and a grievance against Dawodu.  Defs.' 56.1 Statement ¶ 33; Pl.'s 56.1 Resp. ¶ 33; Kane Decl., Ex. E.  Dawodu left for vacation on August 3, 2011.  Defs.' 56.1 Statement ¶ 34; Kane Decl., Ex. A (Transcript of Deposition of Mauricio Baez Romero dated September 17, 2013 ("Pl. Dep.") at 190:12-13.

Between Baez's absence on Workers' Compensation leave and the absence of others who were involved in the grievance process, the Union did not take immediate action to investigate Plaintiff's grievances.  On August 5, 2011, Garcia and Jack Ruggiero, a business agent and member of the Union's Executive Board, met with Plaintiff regarding his grievances.  Defs.' 56.1 Statement ¶¶ 46, 50-52; Pl. Dep. at 172:2-12, 177:13-16.  At the meeting, Garcia and Ruggiero said that it would take several weeks to schedule a "Step 2" meeting.  Defs.' 56.1 Statement ¶ 54; Pl. Dep. at 173:11-22.

On or around August 15, 2011, Dawodu returned from vacation.  Defs.' 56.1 Statement ¶ 34; Pl. Dep. at 201:25-202:3.  Baez decided to leave work because he did not want to be near Dawodu, even though another supervisor had offered him work on another floor.  Defs.' 56.1 Statement ¶¶ 36-37; Pl. Dep. at 202:4-203:14, 448:16-22.  Before leaving work, Baez filed another grievance, Defs.' 56.1 Statement ¶ 42, Kane Decl., Ex. F, and told a supervisor that he was not coming back due to the unsafe and hostile working environment.  Defs.' 56.1 Statement ¶¶ 36-37; Pl. Dep. at 90:17-20; Am. Compl. ¶¶ 85-86.  Garcia advised Baez to call in sick every day that he was not reporting to work.  Defs.' 56.1 Statement ¶¶ 21, 40-41; Pl. Dep. at 210:18-212:2; Kane Decl., Ex. B (Transcript of Deposition of Ignacio Garcia dated March 18, 2014 ("Garcia Dep.") at 118:22-119:11, 168:19-169:8.  Baez did not report to work on August 16 and 17, nor did he call in sick or otherwise communicate with his supervisors.  Defs.' 56.1 Statement

¶ 43; Pl. Dep. at 214:20-24.  Baez's only communication with the Company during this time was with a DHL Human Resources representative.  Defs.' 56.1 Statement ¶ 43; Pl. Dep. at 214:20-24.

Baez was terminated on August 18, 2015 for unauthorized failure to report to work for three consecutive days.  Defs.' 56.1 Statement ¶ 11; Broderick Decl., Ex. H.  Baez promptly filed a grievance for "unjust termination," stating that he had left work because he could not work with Dawodu and that he had asked another supervisor to call him "when [Montecalvo] and Human Resources were ready to address [his] case."  Defs.' 56.1 Statement ¶ 45; Broderick Decl., Ex. I.  On or about September 16, 2011, Baez, Garcia and Ruggiero attended a "Step 2" grievance meeting with a DHL Labor Relations Officer and Montecalvo, during which DHL denied Baez's grievances and upheld its termination decision.  Defs.' 56.1 Statement ¶ 56; Broderick Decl., Ex. I.  After the Step 2 meeting, Baez filed an NLRB complaint against the Union for breaching its duty of fair representation; that complaint was subsequently withdrawn after an NLRB field attorney convinced Baez that the Union's decision to proceed with arbitration demonstrated that the Union was acting in good faith.  Am. Compl. ¶¶ 98-99, Exs. W, Y; Defs.' 56.1 Statement ¶ 114; Kane Decl., Ex. I.

The arbitration occurred on November 18, 2011.  Defs.' 56.1 Statement ¶¶ 13-14.  During the arbitration, counsel for the Union focused on Baez's termination, rather than his earlier grievances against Montecalvo and Dawodu.  Pl. Dep. at 96:23-97:10; Garcia Dep. at 258:13-262:10.  Baez testified at the arbitration, however, and discussed his first grievance.  Pl. Dep. at 166:7-24.  With respect to Plaintiff's unfair termination claim, counsel for the Union argued that because Baez had been in contact with Human Resources on August 15, 16 and 17th, he was not a "no call no show" employee.  Garcia Dep. at 358:14-24.  Counsel also questioned two supervisors as to whether Baez's August 15, 2011 departure was unauthorized, Garcia Dep. at 292:7-294:25; Am. Compl. ¶¶ 146-47, but the Union did not call Montecalvo, Dawodu, Garcia

4

or Gabrielli to testify.  Defs.' 56.1 Statement ¶¶ 66-71; Am. Compl. ¶ 114.  DHL showed a portion of the video of the August 2, 2011 argument between Baez and Dawodu, and counsel for the Union did not object or request that the entire video be shown.  Garcia Dep. at 211:23-213:9.  Counsel for the Union also chose not to present a note from Baez's doctor indicating that his mental health had suffered as a result of his termination.  Am. Compl. ¶ 115; Kane Decl., Ex. N.  The arbitrator upheld Baez's termination.  Defs.' 56.1 Statement ¶ 17; Broderick Decl., Ex. J.

On or around January 30, 2012, Baez filed a second NLRB complaint against the Union for breach of its duty of fair representation.  Kane Decl., Exs. I, J.  On April 20, 2012, the NLRB Regional Director dismissed Baez's complaint.  Kane Decl., Ex. K.  Baez appealed that decision to the NLRB Office of Appeals; his appeal was dismissed on July 23, 2012.  Kane Decl., Ex. L.  Baez also filed a discrimination complaint with the New York State Workers' Compensation Board, alleging "retaliation for filing work-related injury, hostile environment and wrongful discharge."  Am. Compl. ¶ 12; Broderick Decl., Ex. L. at ECF p. 2.

Plaintiff initiated this litigation on March 15, 2012.  DHL promptly moved to affirm the arbitration award.  Dkts. 16-18.  Judge Kaplan, to whom this case was previously assigned, granted DHL's motion, Dkt. 73, and then affirmed that decision over Plaintiff's objection.  Dkt. 77.

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  "A material fact is one that would 'affect the outcome of the suit under the governing law,' and a dispute about a genuine issue of material fact occurs if the evidence is such that 'a reasonable [factfinder] could return a verdict for the nonmoving party.'"  *Sista v. CDC Ixis N. Am., Inc.,* 445 F.3d 161, 169 (2d

Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). Thus, "'[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Scott v. Harris,* 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986) (internal quotation marks omitted)).

The moving party bears the burden of showing that it is entitled to summary judgment, *Huminski v. Corsones,* 396 F.3d 53, 69 (2d Cir. 2004) (citing *Castro v. United States,* 34 F.3d 106, 112 (2d Cir. 1994)), and courts must therefore "construe the evidence in the light most favorable to the non-moving party and . . . draw all reasonable inferences in [the non-movant's] favor." *Huminski,* 396 F.3d at 69 (citing *World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.,* 345 F.3d 154, 166 (2d Cir. 2003)). Because Plaintiff, the non-movant, is proceeding *pro se*, the Court grants him "special latitude," *Salahuddin v. Coughlin,* 999 F. Supp. 526, 535 (S.D.N.Y. 1998), and reads his pleadings and briefs "liberally," so as to "raise the strongest arguments they suggest." *Zdorenko v. Meow Inc.,* No. 12 CIV. 671 (KBF), 2013 WL 3528587, at *2 (S.D.N.Y. July 11, 2013) (quoting *Bertin v. United States.* 478 F.3d 489, 491 (2d Cir. 2007)).

To overcome a motion for summary judgment, however, Plaintiff "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [his] version of the events is not wholly fanciful." *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir. 1998). *See also Lipton v. Nature Co.,* 71 F.3d 464, 469 (2d Cir. 1995) ("mere conclusory allegations or denials in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (internal quotations and citation omitted). This rule applies with equal force to counseled and *pro se* litigants alike. *Saldana v. Local 32B–32J Serv. Emps. Int'l Union,* No. 03 CIV.1853

(DF), 2005 WL 66895, at *2 (S.D.N.Y. Jan. 12, 2005) ("Even a *pro se* plaintiff [ ] cannot withstand a motion for summary judgment by relying merely on the allegations of a complaint."). *See also Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir. 1991) (a *pro se* party's "bald assertion," without evidentiary support, cannot overcome a properly-supported motion for summary judgment).

I.     **DHL is Entitled to Summary Judgment on Plaintiff's Fourth Cause of Action**

In his Fourth cause of action, Plaintiff claims that DHL "violated NYS Workers' Compensation Law Section 120 by retal[iating] against [him] for reporting an on the job injury and seeking workers' compensation benefits." Am. Compl. ¶ 191. DHL argues that this claim must be dismissed because Plaintiff's exclusive remedy under New York law is to file a complaint with the Workers' Compensation Board, which he has already done. *See* DHL Mem. at 4-6. DHL is correct.

Section 120 of the New York Workers' Compensation Law makes it unlawful "for any employer . . . to discharge or in any other manner discriminate against an employee as to his or her employment because such employee has claimed or attempted to claim compensation from such employer . . . ." N.Y. Workers' Comp. Law § 120. Employees wishing to report a violation of Section 120 must file a complaint with the Workers' Compensation Board. *Id.* This administrative procedure is the exclusive remedy available to aggrieved employees. *See Burlew v. American Mutual Ins. Co.,* 63 N.Y.2d 412, 416 (N.Y. 1984) ("[A]ll employer conduct that is regulated by the Workers' Compensation Law is subject to the protection of that law's exclusivity; if the employer violates any provision of the code, an employee's remedies cannot exceed those granted in the statutes.").

Plaintiff initiated a complaint with the Workers' Compensation Board alleging "retaliation for filing work-related injury, hostile environment and wrongful discharge." *See*

Broderick Decl., Ex. L.  Because that proceeding is the sole forum in which Plaintiff can litigate his claim under Section 120, Plaintiff's Fourth cause of action is dismissed.

> II. **DHL's Motion for Summary Judgment as to Plaintiff's Second, Eighth and Thirteenth Causes of Action is Denied**

In his Second, Eighth and Thirteenth causes of action, Plaintiff claims that DHL created a hostile work environment in violation of federal law (Second cause of action), state law (Eighth cause of action) and municipal law (Thirteenth cause of action).  Am. Compl. ¶¶ 187, 198, 208.  *See also* 42 U.S.C. 2000e *et seq*. (2); New York State Human Rights Law § 290 *et seq*. ("NY State HRL"); New York City Human Rights Law § 8-101 *et seq*. ("NY City HRL").

DHL argues that these claims must be dismissed because Plaintiff has failed "to link the hostility about which he complains to a particular protected class."  DHL Mem. at 6-7.[1]  Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on an individual's "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2.  Both the NY State HRL and NY City HRL expand upon the classes protected under federal law to include, as relevant here, one's disability status.  *See* N.Y. Exec. Law § 296; N.Y. City Admin. Code § 8–107.  DHL argues that Plaintiff has claimed discrimination solely based on his filing for Workers' Compensation Benefits, rather than on his membership in a protected class.  DHL Reply at 2-3 ("Workers' Compensation eligibility is not among the protected classes.").

The Court disagrees.  However sparse and inartfully pled, Plaintiff has in fact alleged that he was subject to a hostile work environment at DHL as a result of his race, national origin and—as applicable under the NY State HRL and NY City HRL—disability.  *See* Am. Compl. ¶¶

---

[1] The Court notes that although DHL's preliminary statement argues that Plaintiff's Second, Eighth and Thirteenth causes of action should be dismissed, the argument in the body of its brief is limited to Plaintiff's Eighth and Thirteenth causes of action.  *See* DHL Mem. at 1, 6.  Because all three causes of action raise hostile work environment claims, the Court considers DHL's argument to relate to all three causes of action.

44-48, 124, 125.  In addition, Plaintiff's Sur-reply Memorandum reiterates Plaintiff's claims based on his national origin (Dominican) and his disability (allegedly arising from his back injury).  Pl.'s Sur-reply Mem. at 1.  While Plaintiff's opposition argument is far from clear, considering his *pro se* status, the Court denies DHL's Motion for Partial Summary Judgment on the limited grounds presented.

A serious question nonetheless remains as to whether a genuine issue of material fact exists in relation to Plaintiff's hostile work environment claims.  The standard for establishing a hostile work environment under Title VII and the New York State HRL is essentially the same.  *See Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597, 609 (2d Cir. 2006) (citation omitted).  A plaintiff must show that the conduct at issue is "severe or pervasive enough to create an objectively hostile or abusive work environment," and "the victim must also subjectively perceive that environment to be abusive." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (citation omitted).  Factors to be considered in determining whether the alleged conduct is sufficiently severe include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance." *Id.* (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993)).  In general, "[f]or racist comments, slurs, and jokes to constitute a hostile work environment, there must be 'more than a few isolated incidents of racial enmity.'" *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir. 1997) (citation omitted).  *See also Kotcher v. Rosa and Sullivan Appliance Ctr.,* 957 F.2d 59, 62 (2d Cir. 1992) ("The incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief.") (citation omitted).

While a rational fact-finder could conclude that Plaintiff subjectively experienced a hostile work environment, it is less clear that Plaintiff's claims rise to the level of objective

severity necessary to maintain a claim.  Plaintiff's allegations suggest that Dawodu's racial slurs and jokes were more episodic than continuous and were confined to the week-long period between July 25, 2011, when Plaintiff returned from leave, and August 3, 2011, when Dawodu left for vacation.  Am. Compl. ¶¶ 44, 45, 48.  Plaintiff also alleges that Dawodu physically threatened him on August 2, 2011, but the evidence suggests that this was an isolated occurrence that was not necessarily related to Plaintiff's membership in a protected class, and which did not cause Plaintiff to be fearful.  Pl. Dep. at 265:2-9.  Nonetheless, because DHL did not raise this argument and give Plaintiff an opportunity to respond, the Court declines to dismiss Plaintiff's hostile work environment claims *sua sponte* at this time.

### III.   DHL is Entitled to Summary Judgment on Plaintiff's Fifteenth Cause of Action

Plaintiff's Fifteenth cause of action alleges that, by creating a hostile work environment, and by subjecting him to discrimination, retaliation, and wrongful termination, DHL breached its contract with him.  Am. Compl. ¶ 212.  The only contract mentioned in Plaintiff's Complaint is the CBA, which Plaintiff alleges is "a contract governing [his] employment relationship with Defendant DHL."  Am. Compl. ¶ 17.  Because Plaintiff is not a party to the CBA, DHL argues that he lacks standing to maintain a breach of contract claim.  DHL Mem. at 7-8.

Plaintiff's breach of contract claim based on the CBA is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).  *See Avedisian v. Quinnipiac Univ.,* 387 Fed. Appx. 59, 62–63 (2d Cir. 2010).  "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim . . . or dismissed as pre-empted by federal labor-contract law."  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (internal citation omitted).  *See also Vera v. Saks & Co.,* 335 F.3d 109, 114 (2d Cir. 2003).  LMRA § 301's preemption applies "even when the plaintiff's complaint makes no reference to

federal law and appears to plead an adequate state claim." *Doyle v. United Airlines, Inc.,* 914 F. Supp. 2d 325, 336 (E.D.N.Y. 2012) (citing *Livadas v. Bradshaw,* 512 U.S. 107, 122 n.16 (1994)).

Nonetheless, Plaintiff could still pursue his claim as a "hybrid" LMRA § 301 claim if he could show (1) that DHL violated the collective bargaining agreement and (2) that the union breached its duty of fair representation. *Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers*, 415 F.3d 279, 282 (2d Cir. 2005) (citing *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 164–65 (1983)). *See also McKee v. Transco Products, Inc.,* 874 F.2d 83, 85-86 (2d Cir. 1989) (citing *Vaca v. Sipes,* 386 U.S. 171, 185–86 (1967)). Unionized employees are typically required to exhaust any grievance or arbitration remedies provided under their collective bargaining agreement and will generally be bound by the result of those remedies according to the finality provisions of the agreement. *DelCostello,* 462 U.S. at 164 (citations omitted). If, however, the employee can show that the union breached its duty of fair representation in redressing the grievance, then the employee will not be bound to the contractual remedies provided under the collective bargaining agreement but instead may bring an action directly against the employer. *DeFrancesco v. Bottalico,* No. 10-cv-8193, 2011 WL 6382610, at *5 (S.D.N.Y. Dec. 16, 2011) (citing *Vaca,* 386 U.S. at 184-86)).

Although this Court previously confirmed the arbitrator's finding that DHL had just cause to terminate Plaintiff, the Court did not address at that time Plaintiff's allegations regarding other ways in which DHL may have violated the CBA. The Court therefore rejects the Union's argument that "[b]ecause the Court confirmed the arbitration award, [Plaintiff] cannot demonstrate that the agreement was breached and so his claim must fail." Nevertheless, as discussed further *infra*, the Union did not breach its duty of fair representation to Plaintiff, and,

therefore, to the extent Plaintiff's claim can be construed as a hybrid LMRA § 301 claim, it also fails. *See White v. White Rose Food,* 237 F.3d 174, 178–79 (2d Cir. 2001).

### IV.     DHL Is Entitled to Summary Judgment on Plaintiff's Seventeenth Cause of Action

Plaintiff's Seventeenth cause of action alleges that DHL violated Section 162 of the New York Labor Law by "directing [him] to work eight straight hours without meal break after [Plaintiff's] return to work on July 25, 2011." Am. Compl. ¶ 216.  DHL argues that this claim fails as a matter of law because there is no private cause of action under Section 162 of the New York Labor Law.  N.Y. Lab. Law § 162.  Employer violations of New York Labor Laws are enforced by the New York Commissioner of Labor pursuant to the administrative procedure codified at Section 218, N.Y. Lab. Law § 218, and Courts have therefore found that "there is no private right of action for a violation of § 162." *Cyr v. Berry Plastics Corp.,* No. 5:11-CV-817, 2011 WL 6337713, at *6 (N.D.N.Y. Dec. 19, 2011).  *See also Browne v. IHOP*, No. 05-CV-2602 (DGT), 2005 WL 1889799, at *1 (E.D.N.Y. Aug. 9, 2005) (citing cases).  Because Section 162 violations can *only* be enforced by the Commissioner of Labor, Plaintiff's Seventeenth cause of action is dismissed.

### V.     The Union is Entitled to Summary Judgment on Plaintiff's Sixteenth Cause of Action for the Union's Breach of Its Duty of Fair Representation

The duty of fair representation serves as a "bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *Vaca,* 386 U.S. at 182.  While the duty arises from the need to balance the broad powers granted to unions under national labor policy, it is inherently limited in scope.  *See Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 87 (1989) (citing *NLRB v. Allis-Chalmers Mfg. Co.,* 388 U.S. 175, 181 (1967)).  Accordingly, courts show considerable deference in reviewing a union's representation.  *Air Line Pilots Ass'n v. O'Neill,* 499 U.S. 65,

78 (1991). *See also Vaca,* 386 U.S. at 191-93 (union representatives have substantial discretion to determine whether and how to process grievances). A breach of the duty of fair representation will only be found where the union has acted in a manner that is "arbitrary, discriminatory, or in bad faith." *Vaughn v. Air Line Pilots Ass'n, Intl.,* 604 F.3d 703, 709 (2d Cir. 2010). "Negligence, poor judgment, or ineptitude on the part of union officials in representing a grievant is not actionable." *DeFrancesco*, 2011 WL 6382610, at *5 (citing *Barr v. United Parcel Serv., Inc.,* 868 F.2d 36, 43-44 (2d Cir. 1989)).

### A. The Union's Conduct Was Not Arbitrary

A union's actions are arbitrary only if "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' ... as to be irrational." *Spellacy v. Airline Pilots Association–International,* 156 F.3d 120, 129 (2d Cir. 1998) (citing *O'Neill,* 499 U.S. at 67). A union's decision whether to arbitrate a particular grievance is "discretionary," *Vaughn v. Am. Tel. & Tel. Co*., 92 F.App'x 21, 23 (2d Cir. 2004), and the union's "good faith, non-arbitrary failure to take an action that [was] unlikely to be advantageous does not subject it to liability for breach of its duty of fair representation." *Barr,* 868 F.2d at 44 (2d Cir. 1989).

Although many of Plaintiff's arguments are unclear or internally inconsistent, the Court reads his Amended Complaint and briefs to suggest that the Union acted arbitrarily by (1) failing timely to investigate or arbitrate his non-termination grievances and (2) processing and arbitrating his wrongful termination grievance in a "perfunctory" and irrational manner. *See* Pl.'s Opp. Mem. at 2-3, 6, 8, 13-16, 19-20, 30-31. With respect to his non-termination grievances, the Court finds that the evidentiary record undermines Plaintiff's account of the events. *See e.g.,* Baez Decl., Ex. F at ECF. p. 3-4 (report from Human Resources representative concluding that eyewitness accounts and other evidence of the incidents substantially refuted

Plaintiff's claims). Therefore, it was not irrational for the Union to focus on Plaintiff's wrongful termination claim (which was his most significant claim), rather than his other grievances. Also, although the Union could have taken steps to begin investigating Plaintiff's June 2, 2011 grievance while he was on Workers' Compensation leave, the Union's failure to do so does not mean it breached its duty of fair representation, particularly where, as here, there has been no allegation that DHL denied any of Plaintiff's grievances on untimeliness grounds.

With respect to the manner in which the Union argued Plaintiff's wrongful termination claim at arbitration, the Union's tactical decisions in presenting certain witnesses, evidence and arguments over others were not irrational. Indeed, reasonable minds could find that the Union acted wisely in not presenting Montecalvo, Dawodu, Garcia or Gabelli as witnesses, because none of them appears to have supported Plaintiff's view that his termination was unjustified. *See* Pl.'s Opp. Mem. at 19; Union Mem. at 15-16. Likewise, the Union's decision not to present at arbitration: (1) Plaintiff's police report, which was contradicted by his own prior statements; (2) the complete video footage of his August 2, 2011 exchange with Dawodu, which may have cast him in a negative light, and (3) a medical note discussing his mental health issues cannot be said to be irrational. Finally, the Court finds that the Union acted reasonably in deciding not to argue that Plaintiff's August 15, 2011 departure should have been treated as a standard work "absence" rather than an "unauthorized failure to report to work." Pl.'s Opp. Mem. at 27-32. Apart from Plaintiff's bald assertion that "[a]ctive employees do not need authorization to fail to report to work, nor do they need to check if work is available for them that day," *id.* at 30, there is no evidence to support his interpretation of the CBA.

Moreover, even if the Union's strategic choices about how to proceed in arbitration were flawed, they are not actionable. *See Barr,* 868 F.2d at 43 ("Tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does

give rise to a breach."). This is particularly true where, as here, Plaintiff had the opportunity to testify on his own behalf during the arbitration. *See Santiago v. Nat'l Cleaning Contractors*, No. 88 CIV. 1172 (CSH), 1992 WL 168258, at *6 (S.D.N.Y. June 29, 1992) ("Where an employee has had a chance to present his case, despite union lapses in representation, courts have granted summary judgment dismissing fair representation claims.") (citing *Phillips v. Lenox Hill Hosp.,* 673 F. Supp. 1207, 1215 (S.D.N.Y. 1987)).

### B. There is No Evidence Showing that the Union Acted in a Discriminatory Manner or in Bad Faith

"A union's acts are discriminatory when 'substantial evidence' indicates that it engaged in discrimination that was 'intentional, severe, and unrelated to legitimate union objectives.'" *Vaughn*, 604 F.3d at 709 (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge,* 403 U.S. 274, 301 (1971)). A union official acts in bad faith when he acts with an "improper intent, purpose, or motive." *Spellacy,* 156 F.3d at 126. Plaintiff alleges that the Union acted in bad faith or with a discriminatory intent towards him because: (1) the Union had a history of corruption, Pl.'s Opp. Mem. at 7; (2) Ruggiero was hostile towards Plaintiff during the Step 2 meeting, *id*. at 2; (3) Garcia wanted to maintain an "advantageous relationship" with Montecalvo and Dawodu, *id.* at 2; (4) Garcia's feelings had soured toward Plaintiff as the result of a debt, *id.* at 20-22; and (5) during the arbitration, the Union colluded with DHL and the arbitrator in a "crafty legal scheme" in order to evade legal review. *Id*. at 10. Apart from these wholly unsupported allegations, there is simply no potentially admissible *evidence* that the Union acted in bad faith or in a discriminatory manner towards Baez in processing and arbitrating his claim.

The evidence presented demonstrates that, far from being hostile or acting from ill-will, Garcia actively tried to help Baez keep his job by encouraging him to call in sick rather than

15

simply not reporting to work after August 15, 2011.  Pl. Dep. at 87:11-88:4, 210:18- 212:2; Garcia Dep. at 118:22-119:11, 168:19-169:8.  Plaintiff also admitted that Garcia had never discriminated against him and was "well-intentioned" in trying to help Plaintiff keep his job.  Pl. Dep. at 255:7-9; 257:22-258:4. The evidence further shows that the Union investigated all of Baez's grievances and represented him throughout the grievance process.  It brought his wrongful termination claim to arbitration, even though it was not required to do so and had valid concerns regarding the merits of his case.  Kane Decl. Exs. D-F; Broderick Decl. Ex. I.  At the arbitration, the Union presented arguments in Plaintiff's favor, and Plaintiff testified on his own behalf.  Although ultimately unsuccessful, there is no evidence (apart from Plaintiff's bald assertions) that the Union acted in bad faith or in a manner that was arbitrary or discriminatory. Accordingly, Plaintiff's Sixteenth cause of action for breach of the duty of fair representation must be dismissed.

## CONCLUSION

For the foregoing reasons, the Union's Motion for Summary Judgment is GRANTED, and DHL's Motions for Partial Summary Judgment is GRANTED in part and DENIED in part. Plaintiff's Fourth, Fifteenth, Sixteenth and Seventeenth causes of action are dismissed.  Because Plaintiff has no remaining claims against the Union, the Union is dismissed as a Defendant in this action.  The Clerk of Court is respectfully requested to terminate the open motions at docket numbers 135 and 140.

**SO ORDERED.**

**Date:  March 24, 2015**
   **New York, NY**                               **VALERIE CAPRONI**
                                                  **United States District Judge**